IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MARINE FOODS EXPRESS, LTD.,** § § | |
| **Plaintiff,** § § | |
| v. § | Case No. 1:24-cv-5489 |
| § | |
| **BMO BANK N.A.** f/k/a BMO Harris § | |
| Bank N.A., **WELLS FARGO BANK,** § | |
| **N.A.**, and **JOHN DOE,** § § | |
| **Defendants.** § | Jury Trial Demanded |

## COMPLAINT

Plaintiff Marine Foods Express, Ltd. ("MFE" or "Plaintiff"), by and through its undersigned counsel, files this Complaint against Defendants BMO BANK N.A. f/k/a BMO Harris Bank N.A. ("BMO"), WELLS FARGO BANK, N.A. ("Wells Fargo"), and JOHN DOE ("John Doe") (collectively, "Defendants"), and alleges as follows:

### I. NATURE OF ACTION

1. This action arises from Defendants' conduct with respect to a fraudulently indorsed check (the "Check").

2. The Check was issued by Plaintiff from its account with Wells Fargo and was made payable to its vendor.

3. John Doe converted, fraudulently indorsed, and deposited the Check without authorization into an account with BMO that does not belong to the proper payee of the check.

4. BMO's negligent acceptance and processing of the Check led to significant financial losses for Plaintiff. BMO's failure to exercise ordinary care, as required by law, resulted in the wrongful conversion of funds rightfully belonging to Plaintiff. Additionally, the involvement of an unknown individual, referred to as John Doe, in the fraudulent deposit gives rise to separate

claims for conversion and fraud. Plaintiff seeks damages for the financial losses incurred due to BMO's negligence and wrongful actions, as well as restitution for the unjust enrichment gained by BMO. The failure of BMO to respond or communicate regarding the fraudulent deposit exacerbates Plaintiff's damages and leaves Plaintiff in a precarious position, necessitating legal redress to hold BMO and John Doe accountable for their actions.

5. Because of the fraudulent indorsement on the Check, Wells Fargo was not entitled to withdraw funds from Plaintiff's account in satisfaction of the Check. Accordingly, any money transferred by Wells Fargo to BMO is deemed to come from Wells Fargo's own funds. Wells Fargo, therefore, converted Plaintiff's funds when it honored the Check that was not properly payable. *See LifeUSA Ins. Co. v. Continental Bank, N.A.*, No. 93 C 0839, 1996 WL 18974, at *2 (N.D. Ill. Jan. 18, 1996).

## II. JURISDICTION AND VENUE

6. This Court has diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C §1332(a). BMO is a nationally chartered bank with its principal place of business in Chicago, Illinois. Wells Fargo is a nationally chartered bank with its principal place of business in California. Upon information and belief, John Doe is a citizen of the state of Illinois. MFE is a limited partnership formed under the laws of the state of Texas and with its principal place of business in Houston, Texas. Its members are individuals or entities who are citizens of Texas.

7. This Court has personal jurisdiction over Defendants as, upon information and belief, John Doe is a citizen of Illinois, BMO is headquartered and carries on its business in the State of Illinois, and the acts and omissions that give rise to Plaintiff's claims were done in this state.

8. Venue in this Judicial District is proper under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

### III. PARTIES

9. Plaintiff MFE is a Texas limited partnership with its principal place of business located at 5757 S Loop E, Houston, Texas, 77033. MFE's members are individuals or entities who are citizens of Texas.

10. Defendant BMO is a nationally chartered bank whose principal place of business is 111 W. Monroe Street, Chicago, Illinois 60603.

11. Defendant Wells Fargo is a national chartered bank whose principal place of business is 420 Montgomery Street, San Francisco, CA 94104.

12. Upon information and belief, Defendant John Doe is a person or entity to which money has been fraudulently transferred which occurred in the state of Illinois.

### IV. FACTUAL BACKGROUND

13. MFE is a thriving enterprise specializing in the distribution of high-quality frozen seafood from the world and domestically, serving as a key importer in the Gulf Coast region. With a commitment to sustainability and excellence, MFE maintains partnerships with numerous primary producers, ensuring the delivery of premium products directly to restaurants, retailers, and food service distributors across the United States. Housed within a state-of-the-art 100,000 square foot warehouse facility in Houston, MFE stands as a leader in its industry.

14. On August 15, 2022, a check numbered 51974 in the amount of $197,462.00 (the "Check") was drawn by MFE and made payable to its vendor, Stellar Seas Imports, located at 700 E. Ogden Ave., Ste. 305, Westmont, IL 60559, and routed through regular U.S. mail on August 22, 2022.

15. However, the Check was converted by an unauthorized person before Plaintiff's vendor, Stellar Seas Imports, and its parent company, Ocean Enterprises, LLC (collectively, "Stellar Seas"), deposited the Check into their bank account with JP Morgan Chase, N.A.

16. Subsequently, the Check was deposited by a John Doe at a branch of BMO on August 31, 2022, by a fraudulent indorsement on the back of the Check. Upon information and belief, the Check was deposited in a checking account opened without authorization from Plaintiff's vendor under the trade name of the vendor, Stella Seas Imports.

17. Wells Fargo honored the check and paid $197,462.00 to BMO, and debited Plaintiff's account in the same amount.

18. The fraudulent deposit came to Plaintiff's attention on September 2, 2022, when Stellar Seas inquired about a past due invoice, having not received the anticipated funds. Plaintiff promptly notified Wells Fargo of the dispute.

19. Further investigation revealed that the Check had been deposited at BMO. Upon presenting the check image to Stellar Seas, Plaintiff was informed that Stellar Seas' bank was JP Morgan Chase, N.A., and not BMO. Consequently, on the same day, Plaintiff initiated fraud case #62247283 with its bank, Wells Fargo, to launch a thorough investigation.

20. On September 13, 2022, Stellar Seas informed Plaintiff that they mailed the affidavit of check fraud to Wells Fargo, affirming that the Check was not deposited into their bank account and that they did not receive any money.

21. Later in September 2022, Plaintiff through its bank, Wells Fargo, notified BMO of the fraudulent deposit of the Check and provided an "Affidavit of Check Fraud" from the payee, Stellar Seas, attesting to the forgery or alteration of the indorsement on the Check.

22. By letter dated March 31, 2023, BMO denied Plaintiff's claim for reimbursement, citing that the check payee matched the name on the deposited account. This denial came approximately six months after the initial notification of the fraudulent deposit, exacerbating the delay and frustration in resolving the matter.

23. Despite resubmissions of the claim for reimbursement by Plaintiff in May and July 2023, accompanied by additional documentation including a letter from Stellar Seas disputing the denial, BMO failed to respond or provide any communication regarding the claim.

24. Plaintiff issued a new check to Stellar Seas in the amount of $197,462.00, which was paid to Stellar Seas to maintain the business relationship with Plaintiff.

25. The lack of cooperation and communication from BMO has left Plaintiff in a precarious position, with no resolution in sight.

## V. CAUSES OF ACTION

### COUNT ONE
*Negligence against BMO*

26. Plaintiff hereby adopts and realleges each and every allegation previously set forth in paragraphs 1-25 as if fully set forth herein.

27. BMO owed a duty of care to Plaintiff to exercise reasonable care in the handling and processing of checks deposited into its accounts.

28. Despite this duty, BMO breached its duty of care by negligently accepting and processing a check, check number 51974 in the amount of $197,462.00, deposited by John Doe at its branch on August 31, 2022.

29. BMO's negligence is further evidenced by its failure to properly verify the authenticity of the indorsement on the check and the identity of the depositors, as well as its failure to implement adequate security measures to prevent fraudulent activities.

30. As a direct and proximate result of BMO's negligence, Plaintiff suffered significant financial losses amounting to $197,462.00, which was paid again to Stellar Seas to maintain the business relationship with Plaintiff.

31. BMO's negligent conduct has caused Plaintiff to suffer damages, including but not limited to financial losses and costs associated with investigating and remedying the fraudulent deposit.

32. Despite Plaintiff's repeated attempts to seek reimbursement and resolution from BMO, BMO failed to respond or provide any communication regarding the claim, exacerbating Plaintiff's damages and leaving Plaintiff in a precarious position.

33. BMO's conduct fell below the standard of care expected of a financial institution in handling checks, and BMO failed to exercise the degree of care that a reasonably prudent bank would have exercised under similar circumstances.

## COUNT TWO
*Violation of the Uniform Commercial Code against BMO*

34. Plaintiff hereby adopts and realleges each and every allegation previously set forth in paragraphs 1-25 as if fully set forth herein.

35. Pursuant to the Uniform Commercial Code ("UCC"), BMO had a duty to exercise ordinary care in processing checks deposited into its accounts, including presenting items for presentment, sending notice of dishonor or nonpayment, returning items not paid or accepted, settling for items upon receiving final settlement, and notifying its transferor of any loss or delay in transit within a reasonable time after discovery thereof. 810 ILCS 5/4-202.

36. BMO breached its duty under the UCC by failing to exercise ordinary care in the processing of check number 51974 in the amount of $197,462.00.

37. Specifically, BMO failed to properly verify the authenticity of the check and the identity of the depositors, which resulted in the wrongful deposit and processing of the Check.

38. BMO's failure to exercise ordinary care led to the payment of a check that was not properly indorsed and did not belong to the payee, thereby causing financial harm to Plaintiff.

39. By depositing a check that was not properly indorsed and failing to detect and prevent the illicit deposit, BMO violated its duty under the UCC to act in good faith and exercise ordinary care.

40. As a direct and proximate result of BMO's violation of the UCC, Plaintiff has suffered financial losses.

41. Pursuant to the UCC, BMO's conduct constitutes a failure to exercise reasonable care, and Plaintiff is entitled to general damages as provided under the UCC.

42. BMO's actions were in direct contravention of the UCC's requirements, and Plaintiff has been unjustly harmed as a result.

## COUNT THREE
*Money Had and Received against BMO*

43. Plaintiff hereby adopts and realleges each and every allegation previously set forth in paragraphs 1-25 as if fully set forth herein.

44. BMO received or obtained possession of money belonging to Plaintiff, namely the sum of $197,462.00, which in equity and good conscience it ought to pay over to Plaintiff.

45. The funds in question were obtained by BMO through the deposit and processing of a check, numbered 51974, which was subsequently credited to an account held by unknown individuals under the trade name of Plaintiff's vendor, Stellar Seas.

46. BMO received these funds without consideration or legal justification, and thus, in equity and good conscience, these funds belong to Plaintiff.

47. Despite being aware of the unauthorized nature of the transaction, BMO has retained the wrongfully obtained funds and has failed to remit them to Plaintiff.

48. Plaintiff has suffered financial losses totaling $197,462.00 as a direct result of BMO's receipt and retention of the wrongfully obtained funds.

49. BMO's receipt and retention of Plaintiff's funds without consideration or entitlement constitute illicit gain at Plaintiff's expense.

50. Plaintiff has no adequate remedy at law and would be left without redress if BMO were permitted to retain the wrongfully obtained funds.

51. It would be equitable and just for BMO to pay over the sum of $197,462.00, which rightfully belongs to Plaintiff, and to which BMO has no legal or equitable entitlement.

## COUNT FOUR
### *Conversion against BMO*

52. Plaintiff hereby adopts and realleges each and every allegation previously set forth in paragraphs 1-25 as if fully set forth herein.

53. BMO intentionally and wrongfully assumed control, dominion, or ownership over Plaintiff property, namely the funds represented by check number 51974 in the amount of $197,462.00.

54. BMO's acceptance and processing of the Check, followed by its crediting of the funds to an account held by unknown individual, John Doe, under the trade name of Plaintiff's vendor, Stellar Seas, constitutes an unauthorized and wrongful assumption of control over Plaintiff's property.

55. Plaintiff had a rightful ownership interest in the funds represented by check number 51974 and the right to immediate possession of said funds.

56. Despite Plaintiff's rightful ownership interest and right to immediate possession of the funds, BMO exercised control and dominion over the funds without authorization or entitlement.

57. Plaintiff demanded possession of the funds from BMO upon discovering the unauthorized transaction, but BMO failed to return the wrongfully obtained funds.

58. By its actions, BMO converted Plaintiff's property, namely the funds represented by check number 51974, by taking them without authorization and transferring them to an account held by unknown individuals.

59. Plaintiff has suffered financial losses totaling $197,462.00, interest, and bank fees as a direct result of BMO's conversion of Plaintiff's property.

## COUNT FIVE
*Unjust Enrichment against BMO*

60. Plaintiff hereby adopts and realleges each and every allegation previously set forth in paragraphs 1-25 as if fully set forth herein.

61. BMO knowingly accepted and processed a check, check number 51974 in the amount of $197,462.00, deposited by John Doe at its branch on August 31, 2022.

62. By accepting and processing the Check, BMO received funds that rightfully belonged to Plaintiff.

63. BMO received these funds without legal justification or entitlement, and thus has been unjustly enriched at Plaintiff's expense. Furthermore, BMO failed to take appropriate action to rectify the situation and return the misappropriated funds to Plaintiff.

64. As a direct and proximate result of BMO's unjust enrichment, Plaintiff has suffered financial losses totaling $197,462.00, which was paid to Stellar Seas to maintain the business relationship, in addition to the funds credited back to Wells Fargo.

65. BMO's retention of the wrongfully obtained funds has deprived Plaintiff of the benefit of its rightful property and has resulted in unjust enrichment to BMO.

66. Plaintiff has no adequate remedy at law and would be left without redress if BMO were permitted to retain the wrongfully obtained funds.

67. It would be inequitable and unjust for BMO to retain the benefits it received from

the fraudulent indorsement on the Check, and Plaintiff is entitled to restitution of the wrongfully obtained funds.

## COUNT SIX
### *Fraud against John Doe*

68. Plaintiff hereby adopts and realleges each and every allegation previously set forth in paragraphs 1-25 as if fully set forth herein.

69. John Doe engaged in fraudulent conduct by depositing check number 51974, in the amount of $197,462.00, into an account held under the trade name of Plaintiff's vendor, Stellar Seas, at a branch of BMO on August 31, 2022.

70. John Doe knowingly and intentionally misrepresented his or her identity and authority to deposit the Check, as well as his/her entitlement to the funds represented by the Check.

71. John Doe's fraudulent actions were undertaken with the intent to deceive Plaintiff and wrongfully obtain possession and control over Plaintiff's funds.

72. As a result of John Doe's fraudulent conduct, Plaintiff suffered financial losses totaling $197,462.00, which was paid to Stellar Seas to maintain the business relationship with Plaintiff, in addition to the funds credited back to Wells Fargo.

73. John Doe's fraudulent conduct constitutes actionable fraud, as it involved intentional misrepresentation, deception, and financial harm to Plaintiff.

74. Plaintiff has no adequate remedy at law and would be left without redress if John Doe was not held accountable for his/her fraudulent action.

## COUNT SEVEN
### *Conversion against Wells Fargo*

75. Plaintiff hereby adopts and realleges each and every allegation previously set forth in paragraphs 1-25 as if fully set forth herein.

76. Pursuant to UCC 4-401(a), a bank may charge against the account of a customer an item that is properly payable from that account. An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and bank. 810 ILCS 5/4-401(a).

77. The Check was not properly payable because it bore a fraudulent indorsement and was not authorized. *LifeUSA Ins. Co. v. Continental Bank, N.A.*, 1996 WL 18974, at *2 (N.D. IL, Jan. 18, 1996) ("A forged indorsement is generally ineffective in passing title to authorize a drawee to pay").

78. Wells Fargo converted Plaintiff's funds in the amount of the Check when it honored the Check, paid money to BMO, and debited Plaintiff's account in the amount of the Check.

79. Plaintiff suffered damages and injuries as a result of Wells Fargo's conversion, including but not limited to the amount of the Check, consequential and incidental damages resulting from the loss of availability and use of the funds for an extended period of time, and time and effort, annoyance and inconvenience trying to remedy the situation while Wells Fargo and BMO were uncooperative and dilatory.

80. Plaintiff is entitled to at least 5% interest for all amounts converted and owing from Wells Fargo pursuant to 815 ILCS 205/1, *et seq.*, unless another rate greater than 5% is provided by contract. In this case Plaintiff is entitled to 7.21% interest.

## VI. NOTICE AND CONDITIONS PRECEDENT

81. All conditions precedent to maintaining this cause of action have been performed or have otherwise occurred.

## VII. JURY DEMAND

82. Plaintiff respectfully demands the right to have a trial by jury on all claims so triable.

## VIII. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that Defendants be cited to appear and answer, and after trial and hearing, Plaintiff be granted the relief requested herein, specifically the following:

(a) Damages;

(b) Exemplary damages;

(c) Equitable relief, including restitution and disgorgement, and injunctive and declaratory relief;

(d) Pre-judgment interest;

(e) Attorneys' fees;

(f) Costs of suit;

(g) Post-judgment interest; and

(h) Such other and further relief to which Plaintiff may show itself justly entitled at law or in equity.

Respectfully submitted,

By: /s/ Thomas A. Zimmerman, Jr.

Thomas A. Zimmerman, Jr. (IL #6231944)
*tom@attorneyzim.com*
Sharon A. Harris
*sharon@attorneyzim.com*
Matthew C. De Re
*matt@attorneyzim.com*
Jeffrey D. Blake
*jeff@attorneyzim.com*
**Zimmerman Law Offices, P.C**.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
www.attorneyzim.com

                    Charles M.R. Vethan (pro hac vice forthcoming)
                    Texas Bar No. 00791852
                    820 Gessner Road, Suite. 1510
                    Houston, Texas 77024
                    Telephone: (713) 526-2222
                    Facsimile: (713) 526-2230
                    Email: edocs@vethanlaw.com

Attorneys for Plaintiff